LANIER, Judge.
This suit commenced as one for an injunction by the owners of a subdivision lot against a husband and wife as alleged owners of an adjacent lot and a nonprofit corporation contending the owners of the adjacent lot constructed a fence and/or retaining wall on the nonprofit corporation’s property in violation of the restrictive covenants of the subdivision. The wife, as owner of the adjacent lot, answered the petition and filed a third party demand against the nonprofit corporation and the corporation’s chief executive officer. The husband answered and denied ownership of the adjacent lot. After a trial, the district court rendered the following judgment:
IT IS ORDERED, ADJUDGED AND DECREED that the demands of the plaintiffs against Sherwood Lake Association and the demands of the defendants, Harry D. and Helen Swetman, against third party defendant, Victor E. Coursey, are rejected;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that an injunction issue herein, directed to Harry D. and Helen Swetman, prohibiting the said defendants from engaging in any act which is done in violation of the recorded RESTRICTIONS AND PROTECTIVE COVENANTS OF LAKE SHERWOOD ACRES and further ordering that, within thirty (30) days from the date of this judgment, the defendants remove any structure erected in violation of the said restrictions or obtain the approval of any such structure as required by the restrictions.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the fence erected by Harry D. and Helen Swetman from the rear corner of Lot 78 adjacent to Lot 77 to the water line is in violation of Restrictions 1.3 and 2.21, but that the retaining wall built between the rear property line of Lot 78 and the water line, may be necessary to preserve and maintain the lake under the intendment and meaning of Restriction 2.21.
The husband and wife owners of the adjacent lot took this suspensive appeal.
FACTS
On September 27, 1979, Lake Sherwood Acres, Inc. sold to Harry and Helen Swet-man Lot 78 of Lake Sherwood Acres Subdivision. On February 7,1980, Lot 77 of that subdivision was sold to Walter and Charli-ree Floyd. According to the official plat of the subdivision, these adjacent lots have frontage on Lake Sherwood.
Their dispute arose when the Swetmans began construction of a seawall and fence in October of 1980. These improvements were not constructed on the Swetmans’ lot. The fence and wall were constructed on the shoreline, that is, the property existing between the lot property line and the water line of Lake Sherwood. The shoreline is owned by the Sherwood Lake Association, a nonprofit corporation formed for the purpose of owning, preserving, maintaining and regulating Lake Sherwood.
The Swetmans constructed these improvements without first obtaining the approval of the owner, Sherwood Lake Association. The construction of the wall and fence obstructed access by the Floyds to the lake property and to the water’s edge. See Exhibit P-6, attached hereto as Appendix A.
*147 On October 23, 1980, Victor Coursey, Jr., president of Lake Sherwood Acres, Inc., sent a letter to the Swetmans. The letter set out that the Swetmans had failed to obtain approval for the fence and wall from the Lake Sherwood Council. The Lake Sherwood Council is established in the restrictive covenants as a committee to administer the covenants. The letter asserted the Swetmans were in violation of paragraphs 1.3 and 2.21 of the restrictions and covenants. Apparently, nothing was done by the Swetmans to comply with the letter, and this suit was filed by the Floyds.
WHAT CONSTITUTES LAKE SHERWOOD?
(Assignment of Error No. 1)
The Swetmans contend the trial court erred in finding that Lake Sherwood included the property between their rear property line and the water’s edge of the lake for purposes of applying the provisions of paragraph 2.21 of the restrictive covenants. Paragraph 2.21 provides as follows:
The lake shown on the official plat of Lake Sherwood Acres shall be available for swimming, boating and fishing by all members of the Sherwood Lake Association, subject to reasonable rules and regulations which may be adopted by Sherwood Lake Association. The reasonableness of such rules and regulations shall take into consideration the privacy of those lots adjoining the lake, utilization by all residents of the subdivision who are willing to pay their fair share of the cost of maintaining and preserving the lake, and the financial burden of maintaining and preserving the lake, as well as other reasonable considerations. The lake shall not be used by craft powered by internal combusion [sic] engines and the Sherwood Lake Association shall not have the power to permit such use. Fishing in the lake shall be regulated by and subject to control by Sherwood Lake Association. The lake shall be owned by Sherwood Lake Association; however, no structure shall be erected in or over the lake, except such as may be necessary to preserve and maintain the lake and Sherwood Lake Association shall have no power to alter this limitation. Owners of lots adjoining the lake shall maintain their respective lots and the shoreline down to the water line unless other provisions are made by Sherwood Lake Association.
[Emphasis added.]
The official plat of the Lake Sherwood Acres, Inc. subdivision shows “Lake Sherwood” as the area which goes up to the rear property lines of the lots bordering it. The plat of Lots 77 and 78 shows that there is a portion of dry land between the rear lot lines and the water’s edge of Lake Sherwood. The wall and fence are built on this portion of dry land and, thus, clearly are not built on the Swetmans’ lot. These structures are built on Lake Sherwood as shown on the official subdivision plat. Lake Sherwood is composed of dry land and land covered by water. Lake Sherwood (dry and wet land) belongs to the Sherwood Lake Association. This ruling of the trial court is correct.
This assignment of error is without merit.
AUTHORITY OF THE FLOYDS TO OBTAIN INJUNCTIVE RELIEF
(Assignment of Error No. 4)
The Swetmans contend the trial court committed error “in dismissing the Sherwood Lake Association as a defendant in the action and in holding that Floyd had the right to bring suit absent a showing that the Sherwood Lake Association had failed in its duties to enforce the restriction as it pertains to a purported violation by the Swetman’s [sic].”
This case is controlled by paragraph 2.21. The shoreline where the wall and fence were built by the Swetmans is owned by the Sherwood Lake Association. The record is clear that the Swetmans built the fence and wall on the shoreline without permission. Pursuant to paragraph 4.2, the Floyds, as owners of a lot adjoining *148 Lake Sherwood, are compulsory and automatic members of the Sherwood Lake Association. Pursuant to paragraph 2.21, the Floyds, as members of the Sherwood Lake Association, have a right to use the lake (wet and dry land) “for swimming, boating and fishing” subject only “to reasonable rules and regulations ... adopted by Sherwood Lake Association.” Thus, lots adjoining the lake (such as that owned by the Floyds) enjoy the benefit of a conventional predial servitude for their owners to swim, boat and fish in the lake. La.C.C. art. 646 et seq. A predial servitude is an incorporeal immovable. La.C.C. art. 649. The Floyds, as owners of a lot favored by this predial servitude, have a right to injunctive relief if their enjoyment of this real right is obstructed or disturbed. La.C.C.P. art. 3663; Hailey v. Panno, 472 So.2d 97 (La.App. 5th Cir.1985); Red River v. Noles, 406 So.2d 294 (La.App. 3rd Cir.1981). The facts show the construction of the fence and wall on the shoreline without consent obstructed and disturbed the Floyds in the exercise of their predial servitude rights and the Floyds are entitled to injunctive relief. The Sherwood Lake Association is neither a necessary nor an indispensable party to such an action.
This assignment of error is without merit.
ABANDONMENT OF RESTRICTIVE COVENANT
(Assignments of Error Nos. 2 and 3)
In these assignments of error, the Swet-mans contend the trial court committed error by finding the restrictive covenants had not been abandoned and in refusing to receive evidence showing violations of the restrictive covenants which occurred after the Swetmans’ alleged violation.
Initially, we note paragraph 1.3 of the restrictive covenants is not applicable to this case. Paragraph 1.3 provides, in pertinent part, as follows:
There is hereby vested in the Council the following powers and authority:
The Council shall have such authority as may be given it by this document. Anything to the contrary notwithstanding, no residence, building, fence, wall or other structure shall be commenced, erected or maintained, nor shall any addition, change or alteration of any kind be made on any lot in the subdivision until plans and specifications showing the nature, kind, shape, height, materials, floor plans, color schemes, locations and approximate costs of such structure and grading plan of the lot on which improvements are to be erected shall have been submitted to and approved in writing by a majority vote of the Council or their authorized representative and a copy thereof is finally approved and lodged permanently with the Council.
[Emphasis added.]
Paragraph 1.3, by its own terms, applied to work done on a lot. The construction complained of herein was not done on a lot, but was done on the shoreline.
The restrictive covenants herein impose building restrictions on the lots in the subdivision, La.C.C. art. 775 et seq., create the conventional predial servitude described above and impose a building restriction on the lake property. While the constructions made by the Swetmans may constitute a violation of the building restriction on the lake property that no structure shall be erected in or over the lake unless it is necessary to preserve and maintain the lake, such constructions also constitute obstructions and/or disturbances of the conventional predial servitude benefiting the Floyd lot. Because, pursuant to La.C.C.P. art. 2164, we rest our holding on the existence of the servitude, we need not determine whether or not the building restriction on the lake property was abandoned pursuant to La.C.C. art. 782. There has been no abandonment of the servitude. La.C.C. art. 770.
These assignments of error are without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at the cost of the appellants.
AFFIRMED.
*149 [[Image here]]