805 So.2d 1200 (2002)
MONROE REAL ESTATE & DEVELOPMENT CO., INC., Plaintiff-Appellee,
v.
SUNSHINE EQUIPMENT CO., INC., Defendant-Appellant.
No. 35,555-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2002.
*1201 Barry W. Dowd, Monroe, Counsel for Appellant.
Guerriero & Guerriero, by Joe D. Guerriero, Monroe, Counsel for Appellee.
Before GASKINS, CARAWAY and KOSTELKA, JJ.
KOSTELKA, Judge.
Sunshine Equipment Co., Inc. ("Sunshine") appeals the trial court's denial of a preliminary injunction seeking to prohibit Monroe Real Estate & Development Co., Inc. ("Monroe Real Estate") from terminating an easement. Finding manifest error in that ruling, we reverse the trial court judgment and remand for the issuance of a preliminary injunction prohibiting Monroe Real Estate from terminating or interfering with the easement at issue and preserving the status quo pending final resolution of the underlying ownership claims.

FACTS
Since January of 1993, Sunshine has operated an equipment retail dealership in Monroe, Louisiana on a piece of property ("Lot 3") it leases from Monroe Real Estate. The protracted ownership history of Lot 3 is as follows. On November 9, 1990, Hyco Properties, L.L.C. ("Hyco"), then owner of Lot 3, entered into a Lease/Purchase Agreement ("Agreement") for Lot 3 with Kathryn's Power Equipment, Inc. ("Kathryn's"). The agreement gave Kathryn's the option to purchase Lot 3 during the five-year lease term and also specifically stated that it was "subject to" a "Declaration of Reciprocal Easements Agreement" ("Declaration").
The Declaration, which created building restrictions including various easements, was executed on March 1, 1988 by Howard Brothers Discount Store, the then sole owner of five subdivided lots ("Howard's Plaza") including Lot 3 and its northern boundary lot ("Lot 2"). Included in the Declaration was a twenty-foot easement on Lot 2 for the benefit of Lot 3; the easement provided the occupants of Lot 3 otherwise unobtainable access to Breard Street, a main thoroughfare. The only other available entrance to Lot 3 was through its southern boundary via St. Charles Avenue, a secondary street.
Thereafter, Sunshine acquired Kathryn's and was assigned the Agreement on January 28, 1993. On June 1, 1995, Sunshine and Hyco amended the Agreement to alter the purchase price and extend the terms of the lease and the option to purchase until December 31, 2000; the amendment otherwise ratified the remaining terms and conditions of the Agreement.
The facts giving rise to the present litigation began when Monroe Real Estate obtained ownership of Lots 2 and 3 from Hyco in June of 1999. On September 21, 2000, Monroe Real Estate filed a Petition for Declaratory Judgment seeking to (1) terminate the Agreement as of July 21, 2000 due to Sunshine's alleged failure to keep the property maintained in accordance with the Agreement; and (2) declare Sunshine's forfeiture of the right to exercise its option to purchase Lot 3.
On November 10, 2000, Monroe Real Estate filed into the public records a Termination of Declaration of Reciprocal Easements ("Termination") signed by the then three owners of Howard's Plaza in accordance with the Declaration provisions which allowed for termination of the easement upon the consent of all of the owners.[1] Then, on December 19, 2000, Monroe *1202 Real Estate filed a separate action seeking to have the Agreement canceled based upon Sunshine's alleged failure to timely forward the December 1, 2000 lease payment.
On February 1, 2001, Sunshine sought permanent and preliminary injunctions to prohibit Monroe Real Estate from terminating the easement. Therein, Sunshine alleged that by letter sent to Monroe Real Estate on August 18, 2000, it had sought to exercise its option to purchase Lot 3. Sunshine requested injunctive relief pending resolution of the remaining proceedings which would ultimately determine the parties' rights, i.e., whether Sunshine had validly exercised its option to purchase the property or whether Monroe Real Estate had terminated the lease.
On February 14, 2001, all actions of the parties were consolidated. Thereafter, Monroe Real Estate amended its petition to include the claims set forth in the Petition for Declaratory Judgment, namely, its entitlement to terminate the Agreement due to Sunshine's failure to maintain a high degree of neatness and cleanliness on the leased premises in accordance with the terms of the Agreement. On July 26, 2001, Sunshine filed an Answer and Reconventional Demand seeking specific performance of the Agreement and specific orders to prevent any easement violations. Resolution of the merits of these consolidated cases remains pending in the trial court.
After a hearing, the trial court denied Sunshine's rule for preliminary injunction on June 25, 2001 for failure to prove irreparable harm. This appeal ensued.

DISCUSSION
Generally, a trial court is granted wide discretion in deciding whether to grant or deny a preliminary injunction and its ruling will not be disturbed absent manifest error. Wied v. TRCM, LLC, 30,106 (La.App. 2d Cir.07/24/97), 698 So.2d 685; Louisiana Gaming Corp. v. Rob's Mini-Mart, Inc., 27,920 (La.App. 2d Cir.01/24/96), 666 So.2d 1268. An applicant for preliminary injunction need make only a prima facie showing that he will prevail on the merits; thus, less proof is required than in an ordinary proceeding for permanent injunction. Hailey v. Panno, 472 So.2d 97 (La.App. 5th Cir.1985).
After reviewing the record before us, we conclude that the trial court erred in requiring Sunshine to demonstrate irreparable injury under the general preliminary injunction requirements and in failing to apply the provisions of La. C.C.P. art. 3663 to the analysis of the facts before it.
La. C.C.P. art. 3663(2) allows a person injunctive relief to protect or restore possession of immovable property or of a real right in immovable property of which he claims ownership, possession or enjoyment. A preliminary injunction brought pursuant to La. C.C.P. art. 3663 does not require a showing of irreparable injury. Chotin Transportation, Inc. v. Harbor Towing & Fleeting, Inc., XXXX-XXXX (La.App. 4th Cir.10/03/01), 804 So.2d 78; Barrilleaux v. NPC, Inc., 97-2040 (La. App. 1st Cir.12/29/97), 704 So.2d 449, writ denied, 99-1002 (La.05/28/99), 743 So.2d 672; Hailey, supra.
In discussing the predecessor article to La. C.C.P. art. 3663, La. Code of Practice art. 298, the Louisiana Supreme Court explained the function of the Article 3663 injunction in Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936). In Churchill, the plaintiff sought to enjoin trespassers from catching muskrats on land which he and his ancestors in title had *1203 possessed for more than a year. The defendants excepted, arguing that plaintiffs' remedy was either by petitory or possessory action. In rejecting that argument, the court explained:
Plaintiff alleged that it had possessed the property as owner for more than a year, and that defendants had committed a trespass thereon and would continue to trespass upon the property until restrained. Under article 298 of the Code of Practice and under the settled jurisprudence of this state, one possessing real estate for more than one year as owner, whether the real owner or not, may protect that possession by injunction. (Emphasis added).
Official Revision Comment (b) to La. C.C.P. art. 3663 cites Churchill and explains that injunctive relief is available in an injunction suit brought to enjoin trespassers and other disturbers, and which is neither a possessory or petitory action. It follows that La. C.C.P. art. 3663(2) is also appropriately read to provide injunctive relief to the person who seeks protection of his claim to ownership, possession or enjoyment of a real right whether ultimately shown to be the owner of that right or not.
In this case, we find that Sunshine has made a prima facie showing of its entitlement to injunctive protection of its claims to specific performance and a predial servitude.
A real right is a right a person has in a thing, a matter of property law. The nature of a real right is one of ownership and its dismemberments. CLK Co., L.L.C. v. CXY Energy, Inc., 98-0802 (La.App. 4th Cir.09/16/98), 719 So.2d 1098, writ denied, 98-3096 (La.02/12/99), 738 So.2d 573.
An option is nothing more than an elective right that, when exercised, ripens into a binding contract to buy and sell. La. C.C. art. 2620, Revision Comment (e); La. C.C. art. 2621; Major Commodity Corp. v. Cunningham, 555 So.2d 525 (La. App. 4th Cir.1989). Of course, a validly exercised option results in a binding contract to sell giving either party the right to specific performance or an action for damages for breach. La. C.C. art. 2623; Southern Sav. Ass'n v. Langford Land Co., 372 So.2d 713 (La.App. 4th Cir.1979). An action for specific performance of a real estate contract is a real action. CLK Co., L.L.C., supra; Smith v. Bickley, 348 So.2d 757 (La.App. 1st Cir.1977). A real action is one brought to enforce real rights. CLK Co., L.L.C., supra.
In its injunction petition, Sunshine succinctly claimed to have exercised the option to purchase Lot 3 on August 18, 2000. In support of these allegations at the preliminary injunction hearing, Sunshine introduced copies of the Agreement which set forth the option terms and an August 18, 2000 letter which declared that Sunshine "hereby exercises its option to purchase the subject property for the sum of $150,000." To the contrary, Monroe Real Estate presented no evidence demonstrating a completed cancellation of the lease prior to the August 18th correspondence or otherwise proving the invalidity of Sunshine's exercise of the option. For purposes of the proof required for a preliminary injunction, we find that Sunshine has sufficiently established that it exercised the option to purchase Lot 3, whether validly or not, on August 18, 2000, and thereby established a claim to ownership or possession of the real right of specific performance which entitles it to the protection afforded by La. C.C.P. art. 3663.[2]
*1204 Moreover, we also conclude that Sunshine's claim to ownership or possession of the real right of specific performance, via its asserted exercise of the option, necessarily includes a claim to ownership or possession of real rights in a predial servitude (i.e., the easement) that entitles it to injunctive protection under La. C.C.P. art. 3663. In its petition, Sunshine alleged that the Agreement provided for transfer of ownership of the easement to Sunshine upon the exercise of the option. In support of these allegations, Sunshine introduced that portion of the Agreement which provided that the "[l]ease is subject to the Declaration of Reciprocal Easements Agreement attached hereto and incorporated herein by reference...." (Emphasis added). At the hearing on the preliminary injunction, Monroe Real Estate conceded that "if [Sunshine] had exercised [its] option and became [sic] an owner, then [Sunshine] would have the right to say whether or not the easement should be cancelled...." For purposes of the proof required for a preliminary injunction, this evidence is sufficient to establish that the Agreement contemplated transfer of ownership of the easement to Sunshine following its valid exercise of the option. See, La. C.C. art. 2461; Prados v. South Central Bell Tel. Co., 329 So.2d 744 (La.1975). Upon proof of these facts, it logically follows that Sunshine's successful proof of a claim to ownership of the real right of specific performance resulting from an asserted exercise of the option necessarily results in a corresponding claim to ownership of the easement, which in this case is appropriately classified as a predial servitudea real right which may also be protected by a La. C.C.P. art. 3663 preliminary injunction. Floyd v. Swetman, 493 So.2d 145 (La.App. 1st Cir.1986); Hailey, supra; Red River v. Noles, 406 So.2d 294 (La.App. 3d Cir.1981).[3]

CONCLUSION
For the foregoing reasons, we conclude that the facts of this matter support the application of the provisions of La. C.C.P. art. 3663 and that the trial court erred in requiring Sunshine to produce evidence of irreparable injury under the general injunction provisions of La. C.C.P. art. 3601. Moreover, because Sunshine has presented prima facie proof of its claims to ownership or possession of a real right to specific performance and in a predial servitude, we reverse the trial court judgment and remand for the issuance of a preliminary injunction pursuant to La. C.C.P. art. 3663, prohibiting Monroe Real Estate from terminating the Declaration or interfering with the Lot 2 easement and maintaining the status quo pending a final determination of the parties' rights in Lot 3.[4] Costs of this appeal are assessed to Monroe Real Estate.
REVERSED AND REMANDED.
NOTES
[1] At the time of the Termination, Monroe Real Estate owned Lots 1, 2 and 3; Penny Realty, Inc. owned Lot 4; and Mid-South Development Co., Inc. owned Lot 5.
[2] Of course, the ultimate determination of the validity of Sunshine's exercise of the option remains to be resolved in the pending proceedings.
[3] The Declaration established various building restrictions and the disputed easement in the nature of a predial servitude of passage over Lot 2 in favor of the owner or occupant of Lot 3. With Sunshine's alleged exercise of the option to purchase Lot 3, the ownership rights to Lots 2 and 3 may become separate for the first time, and we view the Agreement which "incorporates" the rights contained in the Declaration as providing Sunshine with the right to claim ownership of the easement or predial servitude. We choose to resolve the case under La. C.C.P. art. 3663 for the protection of Sunshine's claim to a predial servitude; however, the same result flows under La. C.C. art. 779 for the enforcement by injunction of one's rights to a building restriction. Brier Lake, Inc. v. Jones, 97-2413 (La.04/14/98), 710 So.2d 1054.
[4] Although the evidence suggests that Monroe Real Estate has done nothing to physically block entrance to Lot 3, injunction is proper in this case to prohibit a trespass precipitated by enforcement of the Termination. Chotin Transporation, Inc., supra. Moreover, a preliminary injunction is designed to protect the status quo pending final determination of an action. Liberty Bank and Trust Co. v. Miller, 2000-2146 (La.App. 4th Cir.12/12/01), 803 So.2d 387; Silliman Private School Corp. v. Shareholder Group, XXXX-XXXX (La.App. 2d Cir.02/16/01), 789 So.2d 20, writ denied, XXXX-XXXX (La.03/30/01), 788 So.2d 1194; Wied, supra.