MOONRAKER ISLAND PHASE III ARCHITECTURAL COMMITTEE, INC. AND MICHELLE VIRGETS ADAIR
v.
MARKS LAKE, INC.
No. 2007 CA 2479.
Court of Appeals of Louisiana, First Circuit.
September 9, 2008.
THOMAS J. ADAIR, Counsel for Plaintiff/Appellee Moonraker Island Phase III Architectural Committee, Inc.
BRENT D. BURLEY, Counsel for Plaintiff/Appellee Michelle V. Adair.
MARC D. WINSBERG, MARIA G. MARKS, and MITCHELL W. HERZOG, Counsel for Defendant/Appellant Marks' Lake, Inc.
Before: GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
This is an appeal of the granting of a summary judgment in favor of the plaintiffs granting a permanent injunction. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The plaintiffs, Moonraker Island Phase III Architectural Committee, Inc. and Michelle Virgets Adair,[1] filed their petition for a preliminary and permanent injunction against the defendant, Marks' Lakes, Inc., on February 15, 2005. In their petition, the plaintiffs asserted that a servitude of use exists relative to the entirety of Moonraker Lake, which was formally dedicated to Moonraker Island residents and their guests by Moonraker, Inc., the original developer of Moonraker Island Phase III subdivision; that the defendant had pending applications to dredge and fill vast portions of Moonraker Lake; that the residents have enjoyed the use of Moonraker Lake for more than twenty years; and that they were entitled to injunctive relief to prevent the defendant from violating their collective rights to the use and enjoyment of the lake.
The plaintiffs contended that the Addendum to Reservations, Restrictions and Conditions, Moonraker Island, Phase HI (Addendum), which formally dedicated the use of Moonraker Lake to its residents and guests, explicitly and unambiguously created a predial servitude of use and enjoyment of the entire lake. In response, the defendant claimed that after the filing of the suit, it withdrew its application with the Corps of Engineers and the state Department of Environmental Quality and, therefore, there was no basis for injunctive relief. The defendant further asserted that the Addendum, if valid, created only building restrictions and that the restriction prohibiting the filling of lots had been abandoned. The defendant filed a reconventional demand seeking a declaratory judgment that the Addendum is not a predial servitude, that the restrictions for Moonraker Phase III Subdivision, if valid, have been abandoned, and that it has the right to build to its lot lines, regardless of any interpretation of the Addendum.
On October 14, 2005, the trial court issued reasons for judgment finding that the Addendum created a predial servitude in favor of Moonraker Island residents and their guests to enjoy the use of Moonraker Lake. The court further determined that the residents'"peaceful possession has been disturbed by defendant's attempts to dredge and/or fill Moonraker Lake to develop lots." On November 2, 2005, the trial court issued its order for a preliminary injunction.
Thereafter, on June 15, 2007, the plaintiffs filed a motion for summary judgment, seeking to make the preliminary injunction permanent. Following a hearing, the trial court signed its judgment on October 16, 2007, granting the plaintiffs' motion for summary judgment, permanently enjoining the defendant from "dredging and/or filling any portion of Moonraker Lake," dismissing the defendant's reconventional demand, and dismissing the matter with prejudice in its entirety. The defendant appealed, asserting that the trial court erred in granting the plaintiffs' motion for summary judgment and dismissing its reconventional demand.

APPLICABLE LAW

Summary Judgment
Appellate courts review summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, and in the light most favorable to the non-movant. Yokum v. 615 Bourbon Street, L.L.C., 07-1785, p. 25 (La. 2/26/08), 977 So.2d 859, 977. It is well settled that summary judgment procedure, as set forth in article 966 of the Louisiana Code of Civil Procedure, is designed to secure the just, speedy, and inexpensive determination of actions. See LSA.C.C.P. art. 966(A)(2). Summary judgment shall be rendered if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof remains with the mover and it is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof Only then must the nonmoving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-92, writ denied, 97-1551 (La. 9/26/97), 701 So.2d 991. If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Dickerson v. Piccadilly Restaurants, Inc., 99-2633, pp. 3-4 (La.App. 1 Cir. 12/22/00), 785 So.2d 842, 844.

Predial Servitudes
A predial servitude is described as a charge on a servient estate for the benefit of a dominant estate; the two estates must belong to different owners. LSA-C.C. art. 646. There must be a benefit to the dominant estate. LSAC.C. art. 647. A predial servitude is inseparable from the dominant estate and passes with it. LSA-C.C. art. 650.
Predial servitudes may be established by an owner on his estate or acquired for its benefit; the use and extent of such servitudes are regulated by the title by which they are created. LSA-C.C. art. 697. They are established on, or for the benefit of, distinct corporeal immovables. LSA-C.C. art. 698. The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing the alienation of immovables apply. LSA-C.C. art. 708. They are established by all acts by which immovables may be transferred. LSA-C.C. art. 722.
Further, a predial servitude may be established on a certain part of an estate, if that part is sufficiently described. LSA-C.C. art. 727. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. LSA-C.C. art. 730.
Louisiana Civil Code article 731 provides that a charge established on an estate expressly for the benefit of another estate is a predial servitude although it is not so designated. When the act does not declare expressly that the right granted is for the benefit of an estate or for the benefit of a particular person, the nature of the right is determined in accordance with the following rules. LSA-C.C. art. 732. When the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude. LSA-C.C. art. 733. However, when the right granted is merely for the convenience of a person, it is not considered to be a predial servitude, unless it is acquired by a person as owner of an estate for himself, his heirs and assigns. LSA-C.C. art. 734.

Injunctive relief
Injunction is a special proceeding and a provisional remedy provided for in LSA-C.C.P. art. 3601, et seq. Louisiana Code of Civil Procedure article 3601 provides that an injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. Injunctive relief is specifically provided for by LSA-C.C.P. art. 3663 for the possessor of a real right in immovable property. Article 3663 provides, in pertinent part, as follows:
Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
(1) A plaintiff in a possessory action, during the pendency thereof; and
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment.
Revision Comment (b) for Article 3663 provides:
Injunctive relief is made available in two separate and distinct types of cases: (1) as an ancillary remedy in a possessory action; and (2) as the relief to be granted in an injunction suit brought to enjoin trespassers and other disturbers, and which is neither a possessory nor a petitory action. See Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936).
Irreparable injury is not an element of proof for obtaining injunctive relief pursuant to Article 3663. Carbo v. City of Slidell, 01-0170, pp. 11-12 (La.App. 1 Cir. 1/8/03), 844 So.2d 1, 10-11, writ denied, 03-0392 (La. 4/25/03), 842 So.2d 400.

DISCUSSION
On April 29, 1981, Moonraker, Inc. filed into the conveyance records for St. Tammany Parish the "Reservations, Restrictions and Conditions" for Moonraker Island Phase III, which consisted of eighteen articles including that which created the Moonraker Island Phase III Architectural Committee. Shortly thereafter, on May 14, 1981, Moonraker, Inc. filed an "Addendum to Reservations, Restrictions and Conditions Moonraker Island Phase III," which provided the following, in pertinent part:
19. MOONRAKER LAKE
Moonraker Lake is for the exclusive use of Moonraker Island residents and their guests. In order for residents and guests to enjoy the lake, and in order to protect the rights of everyone concerned, the following rules shall apply:
....
c. Users of the lake shall, at all times, take into consideration the rights of others and shall do nothing to jeopardize the peaceful use of the lake by all residents and their guests.
d. No trash or debris of any type shall be dumped into the lake.
On October 13, 1989, an "Act of Amendment to Reservations, Restrictions and Conditions for Moonraker Island, Phase III" was executed, amending several sections, including section 19, subsection d., as follows:
No trash or debris of any type shall be dumped into the lake unless fill plans are approved in advance by the Moonraker Island. Architectural Committee and will not prevent the peaceful use of the lake by all residents of Moonraker Island.
Additionally, subsection f. was added, which provides:
f. No structure except boat docks, wharves, and gazebos may be constructed in Moonraker Lake.
In 1997, the defendant acquired 84.4961 acres in Moonraker Island Subdivision, the majority of which comprised the bottom of Moonraker Lake, from Scribner Equipment Co., which had acquired the property from Moonraker, Inc. in 1986. In 1999, the defendant subdivided a portion of said property into seventeen lots (lots 305-321) called Phase 3-A-A. Thereafter, in 2004, the defendant sought to rezone and re-subdivide the seventeen lots beyond the official boundaries and extending into the lake.[2] In 2004, the defendant also acquired six lots in Moonraker Island Phase 3D (lots 551-556). The rear property lines of the six lots extend into the lake.[3]
In seeking a preliminary injunction, the plaintiffs asserted that the defendant caused a disturbance of their peaceful possession of the lake in violation of the servitude when it sought approval from various parish and federal agencies to dredge and fill approximately 9.80 acres of Moonraker Lake for the development of homes. Plaintiffs further contended that their possession was further disturbed in fact by the defendant placing construction materials, including concrete culverts, on its Moonraker Island Phase 3-A-A properties without approval. The defendant asserted, however, that the property it purchased is not encumbered by the Addendum and is merely an additional building restriction.
Following a hearing, the trial court agreed with the plaintiffs and stated:
The Court has reviewed the evidence submitted in this matter and finds that the "Addendum to Reservations, Restrictions and Conditions of Moonraker Island, Phase III" which was filed into the public records on May 14, 1981 created a predial servitude in favor of Moonraker Island residents and their guests to enjoy the use of Moonraker Lake. The document evidences the intent of the developer to grant the residents and their guests the right to use Moonraker Lake. Further, users of the lake are obligated to do nothing to jeopardize the peaceful use of the lake for all residents and their guests. The evidence established that the residents have enjoyed the use of the entirety of Moonraker Lake for years.
Thereafter, the trial court adopted these reasons upon granting the plaintiffs' motion for summary judgment requesting a permanent injunction. The court found no genuine issues of material fact that the defendant has disturbed the plaintiffs' peaceful possession of their conventional, predial servitude of use of Moonraker Lake.
In support of its motion for summary judgment, the plaintiffs offered all documents and evidence submitted to the trial court in support of its motion for the preliminary injunction, including the Addendum. In opposing the summary judgment motion, the defendant asserted that the provisions of the Addendum, if valid at all, are merely building restrictions, which have prescribed due to nonuse, and filed several documents regarding same.
Following our de novo review of the record, we find no error in the summary judgment of the trial court granting the plaintiffs' permanent injunction. The trial court correctly determined that the Addendum filed into the public records in 1981 created a conventional predial servitude in favor of Moonraker Island residents and their guests for their exclusive use and enjoyment of Moonraker Lake. Clearly, the right of use of Moonraker Lake is a real benefit to the subdivision lot owners, and the benefit conferred is not merely personal to the original buyers of the lots, but is a real benefit to subsequent lot owners as well. In other words, the use and enjoyment of Moonraker Lake is of considerable value to the estate itself. Therefore, although the Addendum did not expressly refer to the use of Moonraker Lake as a predial servitude, the presumption is that it is, governed by the contract which established it. See LSA-C.C. art. 733; Ogden v. Bankston, 398 So.2d 1037, 1041 (La. 1981).
As to the defendant's argument regarding building restrictions, while the proposed actions of the defendant might constitute violations of building restrictions for the subdivision, this does not negate the fact that said activity would nevertheless be a disturbance or obstruction of the predial servitude established in 1981. See Floyd v. Swetman, 493 So.2d 145, 148 (La.App. 1 Cir. 1986). Thus, finding that the injunctive relief herein was properly granted based on the existence of a predial servitude, we need not address the issues raised by the defendant regarding the building restrictions, including whether the building restrictions, as amended, are valid or whether the building restrictions have been abandoned.
The defendant conceded that it had plans to fill in its lots, all of which extend into the lake, to the lot lines. The defendant asserted that it is not governed by the Addendum and, as a property owner can till its lot to its property lines. However, because the Addendum created the predial servitude when filed in the public records in 1981, the defendant is governed by the Addendum applicable to all owners of Moonraker Island Phase Ill. The fact that the defendant acquired ownership of a part of Moonraker Island Phase III did not give it rights to alter the terms of the initial grant of the servitude.
As previously noted, when predial servitudes are established by the owner, the use and extent of such servitudes are regulated by the title by which they are created. LSA-C.C. art. 697. See also Hospital Service Dist. No. 2 of Parish of Lafourche v. Community Bank of Lafourche, 00-1035, p. 6 (La.App. 1 Cir. 6/22/01), 790 So.2d 688, 693. The plaintiffs asked for and the trial court granted a permanent injunction enjoining the defendant from "dredging and/or filling any portion of Moonraker Lake." Thus, to the extent that the defendant has jeopardized the peaceful use and enjoyment of Moonraker Lake, the plaintiffs are entitled to injunctive relief.[4] Accordingly, we affirm the judgment of the trial court.

CONCLUSION
For the above reasons, the judgment of the trial court in favor of the plaintiffs, Moonraker Island Phase III Architectural Committee, Inc. and Michelle Virgets Adair, is affirmed. Costs of this appeal are assessed to the defendant.
AFFIRMED.
GAIDRY, J., dissenting in part.
Although I agree with most of the conclusions reached by the majority in its analysis of the issues, I must dissent in part as to the summary judgment granting injunctive relief with regard to the six lots in Phase 3D. Based upon my de novo review of the record, including the affidavits and plats, genuine issue of material fact exists on the issue of whether those lots, Lots 551 to 556, were subject to the original restrictions. The trial court should not have granted summary injunctive relief as to those lots.
NOTES
[1] Moonraker Island Phase III Architectural Committee, Inc. is charged with the enforcement of the Reservations, Restrictions and Conditions of Moonraker Island Phase III, and Ms. Adair is a lot owner and resident of Moonraker Island, Phase 3-A.
[2] We note that St. Tammany Parish denied the defendant's request to rezone the property.
[3] These are the six remaining lots of the original twenty-seven lots in Phase 3D. It has been conceded that the first twenty-one lots were filled into the lake to their rear lot lines.
[4] We note that John O. Williams, the president of the Moonraker Island Phase III Architectural Committee, stated in his affidavit, that the Architectural Committee does not object to the idea of responsibly bulk heading any of the lots at issue along the official platted boundary lines and backfilling therein, to prevent further erosion and to protect Moonraker Lake; however, any and all such plans have to be submitted to the coinmittee for review prior to construction. Thus, it appears that where the Architectural Committee approves specific actions by lot owners, it would act as a stipulation or concession on behalf of the users of Moonraker Lake that said action does not disturb the peaceful possession of the lake.