NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-1442


RAYMOND C. DAVIS

VERSUS

ROBERT ST. ROMAIN


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2010-2856
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy Howard Ezell, Judges.


**REVERSED AND REMANDED.**


**David L. Tolin**
**The Tolin Law Firm**
**4320 Calder Avenue**
**Beaumont, TX 77706**
**(409) 896-2792**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      Difang, LLC

**David Frank Dwight**
**1400 Ryan St.**
**Lake Charles, LA 70601**
**(337) 439-3138**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Robert St. Romain**

**Daniel M. Landry, III**
**P.O. Box 3784**
**Lafayette, La 70502**
**(337) 237-7135**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Raymond C. Davis**
    **Difang, LLC**

**EZELL, Judge.**

Difang, L.L.C. appeals the trial court's grant of summary judgment in favor of Robert St. Romain. Difang argues that there are questions of material fact concerning a lease-purchase agreement involving the two parties.

## FACTS

On November 2, 2009, Raymond C. Davis entered into a "PURCHASE AGREEMENT WITH TEMPORARY LEASE" with Robert St. Romain, Aaron St. Romain, and Danielle St. Romain for immovable property containing 330 acres, more or less, for $750.00 an acre. The parties had inherited the property upon the death of Don St. Romain, Sr.

Around this same time, the parties initiated paperwork to amend the judgment of possession to include a piece of property that contained 28.426 acres which had been omitted. Angela St. Romain Treadway, also an heir, sought the help of an attorney to prepare the paperwork. She too had agreed to sell her interest in the property to Raymond. One heir, Don St. Romain, Jr., refused to sell his interest in the property. For some reason, the amending paperwork was never filed with the court.

Pursuant to the lease-purchase agreement, the sale had to close on Monday, April 26, at 4:00 p.m., or sooner if mutually agreed in writing between the seller and purchaser. On April 19, 2010, the attorney handling the purchase and lease of the 330 acres for Raymond sent a letter to the attorney representing Robert St. Romain informing him that the closing would take place at 2:00 p.m. on April 26.[1] In response, Robert's attorney sent a fax to Raymond's attorney on April 26, 2010, requesting assurance that Raymond had certified funds in the amount of $63,658.13 that was due Robert.

---

[1] The attorney handling the appeal for Difang is not the same attorney who handled all the transactional matters for Raymond Davis.

Later, on that same day, Raymond's attorney faxed another letter to Robert's attorney informing him that curative work was required because the judgment of possession needed to be amended to include the 28.426 acres and also noting some concern with Robert's efforts to lease and sell the same property to another entity. The lease-purchase agreement between Robert and Raymond provided that "In the event curative work in connection with the title is required, the parties agree to and do extend the date for passing the Act of Sale to a date not more than THIRTY days from stated date of Act of Sale." Also, apparently, Robert had entered into an additional "PURCHASE AGREEMENT WITH TEMPORARY LEASE" with Palvest, Inc. This agreement was signed by the parties on December 30, 2009, and January 4, 2010, for Robert's share of the 330 acres at $750.00 an acre. On May 21, 2010, Difang, LLC was registered with the Louisiana Secretary of State by Raymond and his wife. On that same date, Raymond assigned and transferred all his right, title, and interest in the lease-purchase agreement between him and the St. Romain heirs to Difang. A consent judgment had been entered in Alabama holding Raymond in judgment for $2,538,905.43 in favor of Danny Sellers. Danny had that judgment executed in Calcasieu Parish on April 17, 2009.

On May 25, 2010, Raymond's attorney sent a letter to Robert's attorney advising that Raymond would be ready to close on May 26 at 1:30 p.m. The sale price was adjusted to $63,658.13. Also, the deed now conveyed Robert's share of the 28.426 acres that was left out of the succession without warranty of title.

Robert was in Houston, so Raymond went to Houston with two deeds: one transferring the property from Robert to Raymond and his wife personally and one transferring the property from Robert to Difang. Raymond also had a cashier's check in the amount of $63,658.13 dated May 24, 2010. Raymond testified that he met Robert in the parking lot of Sterling Bank on May 25, 2010. According to

2

Raymond, the meeting lasted for approximately twenty-five to thirty minutes. Raymond testified that Robert got furious and refused to sign the paperwork. Robert testified that he wanted to have his attorney review the paperwork.

On May 28, 2010, Raymond filed a petition for breach of contract and specific performance. Robert later filed an exception of no right of action because the lease-purchase agreement had been assigned to Difang. The petition was then amended to add Difang as a plaintiff. On October 27, 2011, a judgment was signed granting Robert's exception of no right of action and dismissing Raymond from the proceedings.

On March 12, 2012, Robert filed a motion for summary judgment. A hearing on the matter was held on June 12, 2012. A judgment granting Robert's motion for summary judgment was signed on July 6, 2012, dismissing Difang's claims against him. Difang then filed the present appeal.

## SUMMARY JUDGMENT

Difang argues the trial court erred in granting Robert's motion for summary judgment because there are several questions of material fact. In oral reasons for judgment, the trial court ruled that there was no extension of the April 26 deadline to close because it was not necessary to perform curative work. Robert argues that because no curative work was performed during the curative period of the agreement, the lease-purchase agreement between the parties was no longer valid. Difang argues that Robert himself agreed that the contract was still valid.

"Appellate courts review summary judgments *de novo*, using the same criteria governing the district court's consideration of whether summary judgment is appropriate." *Moreno v. Entergy Corp.*, 12-97, p.10 (La. 12/4/12), 105 So.3d 40, 47. Summary judgment must be granted "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

3

that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

An option to buy, or an option to sell, is a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time. An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates. La.Civ.Code art. 2620. The acceptance or rejection of an offer contained in an option is effective when received by the grantor. Upon such an acceptance the parties become bound by a contract to sell. La.Civ.Code art. 2621. Comment (i) to La.Civ.Code art. 2621 indicates that an option may be assigned.

> An option is nothing more than an elective right that, when exercised, ripens into a binding contract to buy and sell. *Monroe Real Estate & Development Co., Inc. v. Sunshine*, 35,555 (La.App. 2 Cir. 1/23/02), 805 So.2d 1200; *Major Commodity Corp. v. Cunningham*, 555 So.2d 525 (La.App. 4 Cir.1989). In order to invoke a sale under an option to buy, not only must the option to buy be evidenced by a written instrument but the unqualified acceptance thereof must be evidenced in writing, giving full recognition and in accordance with the terms and conditions of the proposal, and formally exercised and tendered to the proposer prior to the expiration date of the stipulated time. *Id.*

*Rushing v. Glover*, 46,980, p. 4 (La.App. 2 Cir. 4/11/12), 91 So.3d 1169, 1172, *writ denied*, 12-1071 (La. 9/12/12), 91 So.3d 1169.

Regarding curative work, the lease-purchase agreement specifically provides:

> CURATIVE WORK: In the event curative work in connection with the title is required, the parties agree to and do extend the date for passing the Act of Sale to a date not more than THIRTY days from stated date of Act of Sale. Title shall be merchantable. If title is not merchantable then, among other rights, Purchaser shall have the right to declare this contract null and void, reserving unto Purchaser the right to demand the return of the deposit and to recover from Seller actual cost% [sic] incurred in processing of sale. Seller to pay for all curative costs.

At the time the parties entered into the lease-purchase agreement, both Raymond and Robert indicated they knew there was some necessary curative work.

The language above seems to automatically extend the sale date to thirty days past the listed sale date of Monday, April 26. It does not appear that curative work must be completed other than the fact that the purchaser, Difang, could declare the contract null and void if title is not merchantable, among other rights.

What other rights are available to Difang is not clear. Also, there are still many questions surrounding the lease-purchase agreement. Is it necessary to perform curative work if the purchaser decides to take the risk and buy the property anyway? Is it necessary to have the curative work performed if the purchaser decides to extend the contract in order to perform curative work? Therefore, we find that there are genuine issues of material fact as to whether Difang's offer to purchase on May 25, 2010, became a valid acceptance creating a contract to sell. The trial court erred in granting summary judgment in favor of Robert St. Romain.

The judgment of the trial court granting summary judgment in favor of Robert St. Romain is reversed. This case is remanded for further proceedings. Costs of this appeal are assessed to Robert St. Romain.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules─Courts of Appeal. Rule 2─16.3.

5