373 So.2d 488 (1979)
William A. SMITH et al., Plaintiffs-Appellants-Respondents,
v.
WEST VIRGINIA OIL & GAS CO. et al., Defendants-Appellees-Relators.
No. 63766.
Supreme Court of Louisiana.
June 25, 1979.
*489 C. McVea Oliver, Oliver & Wilson, George M. Wear, Sr., Monroe, for defendants-appellees-relators.
William A. Hargiss, Monroe, for plaintiffs-appellants-respondents.
*490 TATE, Justice.
The plaintiff landowners sue to enjoin the defendants, primarily the lessee of mineral rights on the plaintiffs' property granted by plaintiffs' ancestors in title, from constructing a gas pipeline across their property or from removing any gas existing under it.
The trial court denied the plaintiffs' rule for a preliminary injunction, holding that the plaintiffs had failed to establish irreparable injury. See La.C.Civ.P. art. 3601.
The court of appeal reversed, holding that the plaintiffs, as owners of the land, were entitled to a preliminary injunction, La.C.Civ.P. art. 3663, even absent a showing of irreparable injury, upon a finding that the lease had expired due to the failure to produce minerals in paying quantities. 365 So.2d 269 (La.App. 2d Cir., 1978).
We granted certiorari, 367 So.2d 391 (La. 1979), to determine whether a mineral lessor-landowner or his successor in title is entitled to a preliminary injunction, absent a showing of irreparable injury, to prevent his mineral lessee from developing or alienating minerals covered by the lease, based simply on the lessor's assertion that the lease has expired due to failure to produce minerals in paying quantities.

I
Because the procedural posture of this case is crucial to our holding, we will set out in some detail the pleadings and actions in the courts below.
Prior to the present rule for an injunction proceeding, the plaintiffs filed an ordinary action on March 1, 1978 for a judgment declaring that a mineral lease between the defendants and the plaintiffs' predecessors in title had terminated due to expiration of its term through cessation of production in paying quantities by the lessees or, alternatively, due to the defendants failure to protect the plaintiffs from drainage.[1]
On the same day, a sublessee of the defendants notified plaintiffs of his intention to construct a gas line on the property in question so that gas could be taken and sold from certain completed but non-producing wells on plaintiffs' property.
On March 2, 1978, by a separate rule to show cause, alleging the invalidity of the lease and alleging that irreparable loss, injury, or damage would otherwise result, the plaintiffs sought preliminary and permanent injunctions and a temporary restraining order to prevent defendants from constructing any pipeline on their property for the delivery of gas from wells on the plaintiffs' property and from disposing of, alienating, or encumbering any gas produced from wells on the petitioner's property.
Upon the plaintiffs providing bond, the trial court granted the temporary restraining order on March 2, 1978, and ordered the defendants to show cause on March 9, 1978 why a preliminary injunction should not issue.
The defendants filed an opposition to the application for preliminary injunction and a motion to dissolve the temporary restraining order and for damages, alleging that the lease was valid and extant and that failure to grant the preliminary injunction would not cause the plaintiffs irreparable injury since the gas line was to be located in an area of unimproved woodlands and since any gas removed would be measured by a meter so that plaintiffs could be compensated for its value.
The plaintiffs' rule for the preliminary injunction and the defendants' motion to dissolve the restraining order were tried on March 13, 1978, to which date it had been continued for trial when the rule came up for hearing on the date set four days earlier. The district court rendered judgment in favor of the defendants dissolving the temporary restraining order and denying the preliminary injunction. The trial court held that the plaintiffs had not met their burden of showing that irreparable injury would occur if the preliminary injunction were not *491 issued, since the land was unimproved and the gas removed could be measured and paid for.
The trial court declined to rule on whether the lease had expired due to the failure to produce minerals in paying quantities. It stated: "The court notes there is a genuine issue as to the validity of the lease involved. On the trial of the matter, there was certain evidence presented which showed that the lease had expired, and there was certain evidence presented by the defendants which showed that the lease was still in existence."[2]
The trial court therefore held that the plaintiff landowners had not sufficiently proved at the hearing of the rule for a preliminary injunction that the lease had expired or was non-existent. The trial court further expressly noted that this issue could be determined at the trial on the merits of the principal demand (i. e., for declaratory judgment that the mineral lease had expired or, alternatively, for cancellation of the lease due to the defendants' failure to protect from drainage), to which the rule for a preliminary injunction was merely ancillary.[3]
Instead of fixing the principal demand for trial on the merits, the plaintiff landowners appealed the denial of the preliminary injunction sought by them.

II
On appeal, the court of appeal reversed.
Reviewing the showing made by the plaintiffs (but see footnote 2 above), the intermediate court determined that the lease had expired for failure to produce in paying quantities. It further held that, since the plaintiffs were the owners and entitled to possession and enjoyment of their land, they were entitled to injunctive relief under the provisions of La.C.Civ.P. art. 3663, without showing irreparable injury, Poole v. Guste, 261 La. 1110, 262 So.2d 339, 344-45 (1972).
For reasons explained below, the court of appeal was in error in holding that the validity of the mineral lease was at issue in the trial of the rule for a preliminary injunction, so that the mineral lessor was entitled to a preliminary injunction under La.C.Civ.P. art. 3663, without showing irreparable injury, if he proved that the lease had expired due to failure to maintain production in paying quantities.

III
Except as otherwise provided by law (such as by La.C.Civ.P. art. 3663), injunctive relief may be granted only "where irreparable injury, loss, or damage may otherwise result to the applicant." La.C.Civ.P. art. 3601.[4] In the instant case, the trial court denied the preliminary injunction on the basis that irreparable injury was not shown.
The court of appeal reversed. It reasoned that, by reason of La.C.Civ.P. art. 3663(2) (to be quoted below), no irreparable *492 injury need be shown, since (accepting the (truncated, see footnote 2) showing educed at the trial of the rule, the lease under which the defendants claimed the right to the minerals had expired) the defendants were likened to trespassers on the land against whom, without any showing of irreparable injury, an injunction may issue to protect ownership and possession. Moorhead v. State, Department of Highways, 322 So.2d 330 (La.App. 2d Cir. 1975); Bagents v. Crowell Long Leaf Lumber Co., 20 So.2d 641 (La.App. 1st Cir. 1945).
In our view, the intermediate court erred in reversing for this reason the trial court's denial of a preliminary injunction.
La.C.Civ.P. art. 3663(2), the enactment relied upon by the court of appeal, provides that injunctive relief "to protect or restore possession of immovable property or of a real right, is available to: * * * (2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment."
This code provision does not authorize injunctive relief to a mineral lessor against a mineral lessee of himself or his ancestor in title, where sought solely on the basis that the lessee's use or exercise of rights on the property are no longer authorized since the lease has terminated. In the light of applicable provisions of the Mineral Code and of the Code of Civil Procedure, neither the mineral lessor nor the mineral lessee are regarded as in possession adverse to the other for purposes of the real actions or of affording injunctive relief under La.C. Civ.P. art. 3663 to the lessor-owner of the land against his lessee's use or exercise of rights granted by the mineral lease:
La.C.Civ.P. art. 3670 (1974) provides that the owner of land subject to a mineral lease cannot assert a real action "against the lessee on account of the termination of the lease by running of the term or occurrence of an express resolutory condition."[5] This is the procedural corollary of Article 154 of the Mineral Code, La.R.S. 31:154, which indicates that the possession of land as its owner does not constitute possession of the mineral rights inherent in such ownership, insofar as concerns "a mineral lessee of the possessor or any of his ancestors."[6]
The Official Comment to this latter article expressly notes its intent that the lessor-owner of the surface is not in possession adverse to his lessee. It further notes that the lessor-owner cannot obtain relief against his mineral lessee by a real action, but is instead relegated to an action to declare the expiration of the lease.[7]
*493 Therefore, the present landowner-lessors are not entitled to injunctive relief against their mineral lessee under La.C.Civ.P. art. 3663(2), which permits the issuance thereof, even without irreparable injury, in order to protect ownership or possession. Simply stated, under the articles of the mineral code and the code of civil procedure previously cited, the mineral lessor is not considered in possession vis a vis his mineral lessee, since the lessor cannot possess adversely to his lessee (at least on contested contentions that the lease has expired or should be cancelled).

IV
This is not to say that a mineral lessor can never obtain injunctive relief against his lessee.
He may do so under La.C.Civ.P. art. 3601, if he proves irreparable injury may otherwise result. This is recognized by Article 134 of the Mineral Code, La.R.S. 31:134, which provides that an aggrieved party is entitled to any appropriate relief provided by law if a mineral lease is violated. The Official Comment to this article notes that "prohibitory injunctions have obvious usefulness where breaches involving irreparable loss can be alleged."
Here, however, the trial court held that the plaintiffs had failed to establish that irreparable injury would result.[8]
The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court, although that discretion is reviewable if erroneously exercised. Schwegmann Brothers G.S. Mkts. v. Louisiana Milk Com'n, 290 So.2d 312 (La.1974) and cases cited therein at p. 316. We find no abuse of the trial court's discretion in denying in the present case the preliminary injunction soughtwhich is, after all, merely an interlocutory remedy to prevent irreparable harm during the pendency of the litigation, through which the principal demand (here, the determination of the expiration, or the cancellation, of the lease) will be decided. See La.C.Civ.P. art. 3601.

V
As the trial court noted, its determination to deny the preliminary injunction has no bearing on the merits of the principal demand (that concerns the validity of the lease or to whether a permanent injunction should issue to prevent the defendants from continuing to remove gas from the plaintiffs' land).
*494 A preliminary injunction is a procedural device interlocutory in nature designed to preserve the existing status pending a trial of the issues on the merits of the case, La.C.Civ.P. art. 3601. Haughton Elevator Division v. State of Louisiana, 367 So.2d 1161 (La.1979); Schwegmann Bros. Giant Super Mkts. v. Louisiana Milk Com'n, 290 So.2d 312 (La.1974); Ridge Park v. Police Jury of Jefferson Parish, 210 La. 351, 27 So.2d 128 (1946). As these decisions note, see also Baton Rouge Cigarette Service, Inc. v. Bloomenstiel, 88 So.2d 742 (La. App. 1st Cir. 1956), the principal demand is determined on its merits only after a full trial under ordinary process,[9] even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit-issues.
Consequently, since the case must be remanded for trial on the merits, we defer decision on various other issues raised,[10] which may receive appropriate review after final judgment on the principal demands of this litigation, if appeal is taken then.

Decree
For the reasons assigned, we reverse the judgment of the court of appeal insofar as it reversed the trial court's denial to the plaintiffs of a preliminary injunction and enjoined the defendants from entering upon the property of the plaintiffs for the purpose of constructing a pipeline of disposing, alienating, or producing any gas from plaintiffs' property. All costs of appellate proceedings to date are assessed against the plaintiffs-appellants; other costs to be assessed upon final determination of the litigation. The case is remanded to the district court for further proceedings on the pending principal demands.
COURT OF APPEAL REVERSED, TRIAL COURT INTERLOCUTORY JUDGMENT REINSTATED INSOFAR AS IT DENIED A PRELIMINARY INJUNCTION; CASE REMANDED TO DISTRICT COURT.
NOTES
[1] This action is still pending in the trial court. Although answer was filed, trial has not been held.
[2] The lessee conducted its operations by virtue of a 1945 lease agreement. Three months before the plaintiff landowners filed their suit, in November, 1977 the lessee had drilled four wells on the plaintiffs' tracts. By calling the defendant lessee's officers or agents on cross-examination, the plaintiffs sought to prove that minerals had not been produced in paying quantities, both following the drilling of these wells and also prior thereto.

This evidence was educed by the plaintiffs over the objection by the defendants that the validity of the lease was not at issue, and without any exhaustive attempt by the defendants to counter it. As the plaintiffs state in their brief in this court: "The defendants objected to all evidence regarding previous operations on the petitioners' properties, production from the leased tract, and its financial condition. Although the defendants were given an extra day to produce subpoenaed evidence, the vast majority of it was not produced, including records which would have shown whether or not there had been production in paying quantities since 1973."
[3] As will be elaborated later in our opinion, a preliminary injunction, triable summarily within two to ten days, La.C.Civ.P. art. 3602, is designed merely to afford temporary relief (usually, to preserve the status quo) "[d]uring the pendency of an action," La.C.Civ.P. art. 3601 (Italics ours), for a permanent injunction or other relief sought by a principal demand.
[4] Article 3601 provides: "An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law * * *."
[5] Article 3670 provides in full:

"One who has granted a mineral lease, or who possesses under a title subject to a mineral lease, whether or not the lease is disclosed by his act of acquisition, cannot assert the real action against the lessee on account of the termination of the lease by running of the term or occurrence of an express resolutory condition."
(The standard mineral lease, such as the lease in the present case, contemplates that production is one means by which the lease may be maintained during and after the primary term. If the lease was extended beyond the primary term by production, cessation of production results in the expiration of the time, or term, agreed by the parties for the duration of the lease. See La.R.S. 31:124, 133 of the Mineral Code, and comments thereunder. In the present case the lease had no primary term, but was to continue as long as there was production in paying quantities from the five wells required by the lease. The plaintiffs essentially contend that the lease was terminated by the failure to maintain production in paying quantities. Article 133 of the Mineral Code, La.R.S. 13:133, provides that the lease terminates at the expiration of the agreed term or the occurrence of an express resolutory condition (the comment gives the failure to pay delay rentals as an example of the latter).)
[6] Article 154, La.R.S. 31:154, provides:

"One who establishes corporeal possession of land as owner under an act translative of title is in possession of the rights in minerals inherent in perfect ownership of land except to the extent mineral rights are reserved in the act or the act is expressly made subject to outstanding mineral rights. This article does not apply to a mineral lessee of the possessor or any of his ancestors." (Italics ours.)
[7] The comment to Article 154, La.R.S. 31:154 concludes:

"The last sentence of Article 154 recognizes an important difference between the mineral lease and other mineral rights. The mineral lease, though it creates a real right in the hands of the lessee is still an elaborate contractual relationship. If a party takes possession of land under title subject to a mineral lease, whether the title discloses the lease or not, the possessor functionally becomes lessor. He is, in that capacity, in a much different position from that of the possessor of land subject to a mineral servitude, a right in which he had no interest and over the exercise of which he has no control. In the latter case, it makes sense to say that the possessor's possession of land is adverse to the servitude owner in those instances in which the possessor's title did not exclude the outstanding mineral rights. However, where the possessor occupies the status of lessor, he is part of a relationship in which there is a mutual interest in the development of the land for production of minerals, part of a type of common undertaking. In this situation it would not be logical or just to construe his possession of the surface as being adverse to his lessee. This will also have procedural consequences in that one possessing land under title subject to a mineral lease will not be able to bring the real actions to secure judgment clearing his title of the lease. He will be relegated to actions seeking judgment that the lease has expired by running of the agreed term or occurrence of some express resolutory condition. See the comments following Articles 133 and 134." (Italics ours.)
[8] The trial court found that due to the proposed location of the pipeline and the nature of the area involved, there would be no injury to the land caused by the clearing for and laying of the pipeline which could not be adequately compensated monetarily. The court found that there were no permanent structures or sites in the right of way path, and that the land involved was rural woodlands, some of which was in a low lying, swampy area. We find no error in the trial court's conclusion that any damage caused to such land could be adequately compensated by damages.

This is not to say, however, that the plaintiffs would not have been entitled to an injunction to prevent laying of the pipeline near a permanent structure on the land, or an area, for instance, which had some intrinsic value to the defendants not computable in monetary terms.
[9] This is subject to the exception that, where the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary injunction, the ruling on the preliminary injunction may definitively dispose of the merit issues. State ex rel. Guste v. City of New Orleans, 363 So.2d 678 (La.1978).
[10] Specifically, we have not made any determination as to the validity of the lease, the alleged non-joinder by plaintiffs of indispensible parties, the propriety of the trial court's dismissal of the plaintiffs' suit against West Virginia as an unincorporated association, the question whether the defendant was guilty of contempt for violating the temporary restraining order, or the question of damages for the alleged wrongful issuance of the temporary restraining order.