803 So.2d 387 (2001)
LIBERTY BANK AND TRUST COMPANY
v.
Joan Miller wife of/and Delmont O. DAPREMONT, Jr.
No. 2000-CA-2146.
Court of Appeal of Louisiana, Fourth Circuit.
December 12, 2001.
Rehearing Denied January 18, 2002.
*388 Gerard O. Salassi, IV, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, LA, Counsel for Plaintiff/Appellant.
Patrick D. Breeden, New Orleans, LA, and Joseph W. Thomas, Law Office of Joseph W. Thomas, New Orleans, LA, Counsel for Defendant/Appellee.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, and Judge DENNIS R. BAGNERIS, Sr.
DENNIS R. BAGNERIS, Sr., Judge.
This appeal relates to a preliminary injunction concerning executory process. Having secured an order through executory process for seizure and sale of the defendants' property, the plaintiff was met with a petition for a preliminary injunction to enjoin the sale. The trial court granted the preliminary injunction that plaintiff now appeals. We affirm and remand.

FACTS AND PROCEDURAL HISTORY
On February 1, 2000, plaintiff, Liberty Bank and Trust Company ("Liberty"), filed a petition for executory process against defendants, Delmont Dapremont, Jr. and his wife Joan Miller Dapremont, seeking to foreclose on property mortgaged by them. Included in the petition was the allegation that the defendants were in default on their obligation. Attached to that petition were:
(1) a promissory note ("hand note") signed by Delmont Dapremont, Jr., on behalf of American Auto Sales, Inc., dated August 16, 1999 for the principal amount of $350,100.00; (Emphasis added)
(2) a collateral mortgage, dated June 18, 1997, executed in authentic form, naming Delmont Dapremont Jr. D/B/A American Auto Sales as borrower, Delmont Dapremont, Jr. and Joan Miller Dapremont as mortgagors, and signed by Delmont Dapremont, Jr. and Joan Miller Dapremont; (Emphasis added)
(3) a collateral mortgage note, dated June 18, 1997, paraphed "Ne Varietur" for identification with this mortgage, and signed by Delmont Dapremont, Jr. and Joan Miller Dapremont. (Emphasis added)
On March 17, 2000, Liberty filed a supplemental and amending petition for executory process. The supplemented and amending petition added Hilda Palao Dapremont and Elaine Dapremont Trotter as additional defendants. This petition also seeks to foreclose on property mortgaged by Delmont Dapremont, Jr., Hilda Dapremont, and Elaine Dapremont Trotter. Attached to the supplemental and amending petition are:
(1) a collateral mortgage note, dated June 18, 1997, paraphed "Ne Varietur" for identification with this mortgage, and signed by Delmont Dapremont, Jr., Hilda Dapremont, and Elaine Dapremont Trotter; (Emphasis Added)
(2) a collateral mortgage, dated June 18, 1997, executed in authentic form, naming Delmont Dapremont Jr. D/B/A American Auto Sales as borrower, Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter as mortgagors, and *389 signed by Delmont Dapremont, Jr., Hilda Palao Dapremont, and Elaine Dapremont Trotter; (Emphasis Added)
Thereafter, the trial court signed an order of executory process pursuant to which defendants' property was seized.
On May 22, 2000, defendants Joan Dapremont and Hilda Dapremont filed a petition seeking to enjoin the sale, alleging that Liberty's petition and its attachments did not satisfy the law of executory process. A hearing was held on June 30, 2000, wherein the trial court granted defendants' request for preliminary injunction.

ISSUES
Numerous issues have been raised; however, we find only two principal questions that require addressing:
(1) Whether the executory proceedings were defective when the collateral mortgage notes and collateral mortgages were signed in defendants' individual capacity and the subsequent hand note was signed by defendant Delmont Dapremont, Jr. in his corporate capacity as American Auto Sales president;
(2) Whether the trial court erred by not requiring defendants to post the required security.

THE APPLICABLE LAWS

The Executory Process
The executory process is an accelerated procedure whereby a mortgage creditor may provoke the sale of encumbered property to satisfy a mortgage. Aetna Life Ins. Co. v. Lama Trusts, 28,328 (La.App. 2 Cir. 5/8/96) 674 So.2d 1086, 1089. As stated in Aetna, the "executory process, which entitles a creditor to seize the debtor's property without citation or the usual delays or formal judgment, is regarded as a harsh remedy, requiring for its use a strict compliance by the creditor with the letter of the law." Id.
La. C.C.P. art. 2635 requires that a petition for executory process to enforce the mortgage, security agreement, or privilege, include authentic evidence of:
(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage, security agreement, or privilege;
(2) The authentic act of mortgage or privilege on immovable property importing a confession of judgment;
(3) The act of mortgage or privilege on movable property importing a confession of judgment whether by authentic act or by private signature duly acknowledged.

A Preliminary Injunction
A preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo pending a full trial on the merits. Breaud v. Amato, 94-1054 (La.App. 5th Cir.5/30/95) 657 So.2d 1337. To obtain a preliminary injunction, the moving party must show that it is entitled to the relief sought, without which irreparable injury, loss or damage will result. La.C.C.P. art. 3601. The trial court has great discretion in deciding whether to grant or deny a preliminary injunction, and its ruling will not be disturbed absent manifest error. Bonomolo v. HMC Management Corp., 477 So.2d 780, 782 (La.App. 4 Cir. 10/9/85).
Further, La.C.C.P. art. 3610 requires the applicant of the preliminary injunction to furnish security in the amount fixed by the court. La. C.C.P. art. 2753 provides that the only time security is not required is when:
(1) The debt secured by the mortgage, security agreement, or privilege is extinguished or prescribed;

*390 (2) The enforcement of the debt secured by the mortgage, security agreement, or privilege is premature, either because the original term allowed for payment, or any extension thereof granted by the creditor, had not expired at the time of the institution of the executory proceeding;
(3) The act evidencing the mortgage or privilege or the security agreement is forged, or the debtor's signature thereto was procured by fraud, violence, or other unlawful means;
(4) The defendant in the executory proceeding has a liquidated claim to plead in compensation against the debt secured by the mortgage, security agreement, or privilege; or
(5) The order directing the issuance of the writ of seizure and sale was rendered without sufficient authentic evidence having been submitted to the court, or the evidence submitted was not actually authentic.

Commercial Laws
LSA-R.S. 10:3-401 entitled "Signature," provides:
(a) A person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under R.S. 10:3-402.
LSAR.S. 10:3-402 entitled "Signature by representative," provides in pertinent part:
(a) If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract. If the represented person is bound, the signature of the representative is the "authorized signature of the represented person" and the represented person is liable on the instrument, whether or not identified in the instrument.
(b) If a representative signs the name of the representative to an instrument and the signature is an authorized signature of the represented person, the following rules apply:
(1) If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument.

DISCUSSION
Issue One: Whether the executory proceedings were defective when the collateral mortgage notes and collateral mortgages were signed in defendants' individual capacity and the subsequent hand note was signed by defendant Delmont Dapremont, Jr. in his corporate capacity as American Auto Sales president.
On appeal, Liberty argues that "any connection between the hand note with respect to the different parties executing same is irrelevant and immaterial." Further, Liberty argues that the definitions contained in the mortgage, when read together, support the fact that the collateral mortgages are pledged to secure any and all indebtedness owed by the mortgagor or borrower, which is defined as the individuals and/or entities signing the collateral mortgage note. We disagree.
The collateral mortgages that are signed in the defendants' individual capacity define "Borrower" as follows:

*391 Borrower. The word `Borrower' means individually, collectively and interchangeably DELMONT DAPREMONT, JR., D/B/A/ AMERICAN AUTO SALES and all other persons and entities signing Borrower's promissory note described below. (Emphasis added)
The collateral mortgages define "Indebtedness" as follows, in pertinent part:
Indebtedness. The word "Indebtedness" means individually, collectively and interchangeably any and all present and future loans, advances, and/or other extensions of credit obtained and/or to be obtained by Borrower and/or Mortgagor from Mortgagee, as well as Mortgagee's successors and assigns, from time to time, one or more times, now and in the future, and any and all promissory notes evidencing such present and/or future loans, advances, and/or other extensions of credit, including without limitation, Borrower's promissory note dated June 18, 1997, in the principal amount of U.S. $75,821.00, and any and all amendments thereto and/or substitutions therefore,.....
A literal reading of the definitions require that in order to hold an entity out as a "borrower," the entity must have signed the "Borrower's promissory note," as described in the 1997 collateral mortgages. However, the record is void of any promissory note for $75,821.00. If in fact American Auto Sales, Inc. signed the $75,821.00 promissory note, then an argument can be made that the corporation is a "Borrower" and thus, could sign the 1999 promissory note for $350,100.00.
Further, we agree with the trial court that there is an issue as to whether Delmont Dapremont, Jr. was authorized to represent the corporation. If in fact the 1999 promissory note that Delmont Dapremont Jr. signed as "president" is an authorized signature of the corporation American Auto Sales, and if the form of the signature shows unambiguously that his signature is made on behalf of American Auto Sales, Inc., then Delmont Dapremont Jr. may not be individually liable on the instrument. See R.S. 10:3-401-2 above. Accordingly, issues remain, including whether the corporation could sign the 1999 hand note and hold the defendants' individually liable, and whether Delmont Dapremont, Jr. had the authority to bind the corporation by signing the hand note as President of American Auto Sales, Inc. Thus, the trial court correctly found that Liberty had not met the strict requirements necessary to avail themselves of the executory process.
Issue Two: Whether the trial court erred by not requiring defendants to post the required security.
Liberty cites La. C.C.P. art. 3610, asserting that the trial court erred by granting the preliminary injunction without requiring a bond be furnished. We agree. Said article states that the security is mandatory unless waived by law. Under the facts of this case, we find no such exemption from security exists in the law. Consequently, we find that the trial judge erred in granting the application for preliminary injunction without requiring defendants to post security. This court is faced with two alternatives, either to "remand the case to the trial court with directions that security be furnished or reverse the judgment that granted the preliminary injunction." Advanced Collision Services, Inc. v. State Department of Transportation, 93-740 (La.App. 5 Cir. 1/25/94) 631 So.2d 1245; Bonomolo, 477 So.2d at 782.
The facts of this case lead this court to believe that the defendants' right to an injunction seems beyond question *392 and that dissolving the injunction would serve no useful purpose. In our opinion, a remand to the trial court for the posting of bond would best serve the interests of justice and efficient administration. Therefore, we remand the case for the trial court to fix the amount of the bond.
For the foregoing reasons, the judgment of the trial court in granting the preliminary injunction is affirmed, and the case is remanded to fix security by the court in accordance with the law.
AFFIRMED AND REMANDED.