NICHOLAS D. PAPPAS, III, M.D.

VERSUS

HAND SURGICAL ASSOCIATES, LTD.

NO. 22-CA-407

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 824-191, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

March 29, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**AFFIRMED IN PART; GRANT OF DECLARATORY JUDGMENT**
**VACATED; REMANDED WITH INSTRUCTIONS**
    **JGG**
    **SMC**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
NICHOLAS D. PAPPAS, III, M.D.
    Leslie W. Ehret
    Benjamin M. Castoriano
    David I. Courcelle

COUNSEL FOR DEFENDANT/APPELLANT,
HAND SURGICAL ASSOCIATES, LTD.
    Philip A. Franco
    Timothy M. Brinks

**GRAVOIS, J.**

Defendant/appellant, Hand Surgical Associates, Ltd. ("HSA"), appeals a judgment rendered on April 7, 2022 in favor of plaintiff, Dr. Nicholas D. Pappas, III, which granted a preliminary injunction and a declaratory judgment in favor of Dr. Pappas, ruling that non-competition covenants contained in an Employment Agreement the parties entered into on or about October 1, 2014 (with an effective date of January 1, 2015) (the "Employment Agreement") were unenforceable upon Dr. Pappas's resignation from HSA in 2021.

On appeal, HSA contends that the trial court erred in granting the preliminary injunction in favor of Dr. Pappas, arguing that the judgment is not supported by the provisions of the Employment Agreement. HSA also argues that the trial court erred in granting the declaratory judgment in favor of Dr. Pappas, finding the non-competition covenants to be unenforceable, when only the preliminary injunction proceeding was properly before the court in the summary proceeding conducted by the court. Finally, HSA argues that the trial court erred in granting the preliminary injunction because (1) Dr. Pappas failed to show irreparable injury, and (2) the court failed to require Dr. Pappas to furnish any security for the preliminary injunction.[1]

For the following reasons, we affirm the trial court's grant of a preliminary injunction in favor of Dr. Pappas. However, we vacate that portion of the judgment which grants a declaratory judgment in favor of Dr. Pappas. We further remand the matter for the trial court to fix security for the issuance of the preliminary injunction and for further proceedings consistent with this opinion.

---

[1] As pointed out *infra*, in brief, Dr. Pappas concedes that he should furnish security for the granting of the preliminary injunction.

# PROCEDURAL HISTORY

On January 7, 2022, Dr. Pappas filed a "Verified Petition for Declaratory Judgment, Preliminary Injunction, Permanent Injunction and Damages" against HSA, seeking (1) a judgment declaring the non-competition covenants contained in the Employment Agreement are no longer in effect and unenforceable against him, (2) preliminary and permanent injunctions prohibiting the enforcement of the non-competition covenants, and (3) damages for his lost income resulting from HSA's attempt to enforce the non-competition covenants. Dr. Pappas also sought attorney's fees and costs. A hearing on the preliminary injunction was set for February 7, 2022.

On February 2, 2022, HSA filed an exception of no cause of action, asserting that the petition failed to state a cause of action because as a matter of law, the non-competition covenants at issue herein continued in effect for a period of two years following the end of Dr. Pappas's employment with HSA in 2021. In its exception, HSA argued that the clear terms of the Employment Agreement stated that the non-competition clauses in the Employment Agreement were "independent of any other provision" and that they "shall survive the termination of this Agreement."[2] Plaintiff filed an opposition to the exception. A hearing on the exception was set for the same date as the hearing on the preliminary injunction, February 7, 2022.[3]

Following the hearing on February 7, 2022 on the preliminary injunction and the exception, the trial court took the matter under advisement and gave the parties

---

[2] Section 14.6 provides:

> Physician agrees that these covenants shall be construed as agreements independent of any other provision of this Agreement and shall survive the termination of this Agreement. Physician further agrees that the existence of any claim, complaint or cause of action by Physician against the Company shall not constitute a defense to the enforcement by the Company of these covenants.

[3] The exception of no cause of action was denied and is not assigned as error in this appeal.

time to file post-trial briefs. The trial court rendered a judgment on April 7, 2022, containing the following decretal language:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the *Verified Petition for Declaratory Judgment and Preliminary Injunction*, filed by the plaintiff, Nicholas D. Pappas, III, M.D., and against the defendant, Hand Surgical Associates, LTD, be and is hereby, **GRANTED.**
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Noncompetition Provision set forth in Section 14 of the Employment Agreement is ***unenforceable.***
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the determination of Attorney's Fees and Court Costs that the prevailing party may recover under Section 16.4 of the Employment Agreement, be and is hereby **RESERVED** for future resolution.[4]

(Emphasis in original.)

## FACTS

Dr. Pappas, a board certified hand surgeon, entered into the Employment Agreement with HSA on or about October 1, 2014 (with an effective date of January 1, 2015), which was attached to his verified petition and introduced into evidence at the hearing on February 7, 2022. The Employment Agreement contained sixteen "Sections," setting forth various employment terms and conditions, such as compensation, benefits, insurance, and other employment matters not at issue in this appeal. Section 13 of the Employment Agreement provided for conditions precedent to the termination of the agreement. Section 14 of the Employment Agreement, containing numerous sub-parts, sets forth the non-competition covenants between the parties that are at issue here.

Pursuant to the Employment Agreement, Section 4.1, Dr. Pappas performed services at LSU two days per week. In late 2017, Dr. Pappas told HSA that he wanted to discontinue his work arrangement with LSU. The parties agreed that

---

[4] Section 16.3, rather than Section 16.4, provides for attorney's fees and court costs to the prevailing party.

this would happen in July of 2018. Dr. Pappas points out that a clause in Section 13 of the Employment Agreement (specifically Section 13.1.5, quoted *infra* in footnote 9) states that the Employment Agreement would automatically terminate upon the expiration or termination of HSA's agreement with LSU. It is Dr. Pappas's position that upon termination of HSA's agreement with LSU, he entered into a new, unwritten, at-will employment agreement with HSA in which he accepted a reduced salary of $300,000.00 per year[5] and the terms of his employment changed in that he no longer had any obligation to perform services at LSU.

On October 22, 2021, Dr. Pappas resigned from HSA. The resignation was preceded by some events, which included HSA's furloughing of Dr. Pappas without pay in early 2020 during the beginning stages of the COVID-19 pandemic quarantine, an increased call schedule that he found onerous, and Dr. Pappas's taking medical leave in 2021 to recuperate from hand surgery. Dr. Pappas testified that he was informed that HSA would "vigorously" litigate the non-competition covenants. He testified at the hearing that while two surgical groups were interested in offering him employment as a hand surgeon in the restricted area,[6] they would not offer him a position until the risk of litigation with HSA was resolved. He testified that because he had a young family, a newly purchased home, and had left previous, more lucrative employment out of state to return to the New Orleans area to be near family, he filed this suit against HSA, feeling that he would suffer irreparable injury if the non-competition covenants contained in

---

[5] Dr. Pappas's previous salary under the Employment Agreement was $350,000.00 per year.

[6] The Employment Agreement provides that the restricted area is the following parishes of Louisiana: Jefferson, Orleans, St. Charles, St. Bernard, Tangipahoa, St. Tammany, Terrebonne, Lafourche, and Plaquemines.

the Employment Agreement were enforced to preclude him from employment in the restricted area.

## ASSIGNMENTS OF ERROR

### *Improper grant of preliminary injunction*

In his petition, Dr. Pappas sought a preliminary injunction against HSA, preventing it from enforcing the non-competition covenants contained in the Employment Agreement pending a full resolution of his request for a declaratory judgment and a permanent injunction, asserting that the non-competition covenants were unenforceable. On appeal, HSA argues that the trial court erred in granting the preliminary injunction sought by Dr. Pappas against HSA in this case.

A preliminary injunction is essentially an interlocutory procedural device designed to preserve the *status quo* between the parties pending a trial on the merits. *Wechem, Inc. v. Evans*, 18-743 (La. App. 5 Cir. 5/30/19), 274 So.3d 877, 884, *writ denied*, 19-01176 (La. 10/15/19), 280 So.3d 600. The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss, or damage to the applicant. *Id*. A preliminary injunction is a summary proceeding and merely requires a *prima facie* showing of a good chance to prevail on the merits. *McCord v. West*, 07-958 (La. App. 5 Cir. 3/25/08), 983 So.2d 133, 140, citing *Bank One, Nat. Ass'n v. Velten*, 04-2001 (La. App. 4 Cir. 8/17/05), 917 So.2d 454. In making a *prima facie* showing, the plaintiff is required to offer less proof than is necessary in an ordinary proceeding for a permanent injunction. *Vartech Sys., Inc. v. Hayden*, 05-2499 (La. App. 1 Cir. 12/20/06), 951 So.2d 247, 255, n.8, citing *State through Louisiana State Bd. of Examiners of Psychologists of the Dep't of Health and Human Services v. Atterberry*, 95-0391 (La. App. 1 Cir. 11/9/95), 664 So.2d 1216, 1220.

The principal demand is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain

the preliminary injunction may touch upon or tentatively decide merit issues. *McCord v. West*, 983 So.2d at 140, citing *Smith v. West Virginia Oil & Gas Co.*, 373 So.2d 488, 494 (La. 1979). Accordingly, the fact that a preliminary injunction is granted in one litigant's favor does not preclude a different result on the merits. *Id.*

Although the judgment on a preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. La. C.C.P. art. 3612.[7] Appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. *Neill Corp. v. Shutt*, 20-0269 (La. App. 1 Cir. 1/25/21), 319 So.3d 872, 878, citing *Hill v. Jindal*, 14-1757 (La. App. 1 Cir. 6/17/15), 175 So.3d 988, 1002, *writ denied*, 15-1394 (La. 10/23/15), 179 So.3d 600.

Non-competition agreements are regulated by La. R.S. 23:921. A non-compete agreement is a contract between the parties who enter it, and is to be construed according to the general rules of contract interpretation. *Smith v. Com. Flooring Gulf Coast, L.L.C.*, 19-0502 (La. App. 4 Cir. 10/9/19), 2019 WL 5073582, at *5. The common intent of the parties is used to interpret a contract. *Restored Surfaces, Inc. v. Sanchez*, 11-529 (La. App. 5 Cir. 12/28/11), 82 So.3d 524, 528; La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. *Id.*; La. C.C. art. 2046. A contract or document is

---

[7] La. C.C.P. art. 3612(B) provides:

An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders.

ambiguous when its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. *All Am. Healthcare, L.L.C. v. Dichiara*, 18-432 (La. App. 5 Cir. 12/27/18), 263 So.3d 922, 928.

Louisiana has a strong public policy disfavoring non-competition agreements between employers and employees. This policy is based on the state's desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. Such agreements are in derogation of the common right, and must be strictly construed against the party seeking their enforcement. *USI Ins. Servs., LLC v. Tappel*, 09-149 (La. App. 5 Cir. 11/10/09), 28 So.3d 419, 423-24, *writ denied*, 09-2697 (La. 2/26/10), 28 So.3d 271. (Internal citations omitted.) Ambiguous terms in employment agreements and non-competition clauses found therein will be construed against the employer who drafted them. *Id.* at 425.

Though this case concerns non-competition covenants, the parties placed at issue more generally the meanings of various provisions in the entire Employment Agreement, rather than whether the terms of the non-competition covenants contained therein complied with La. R.S. 23:921. In other words, the parties do not dispute the application or validity of the particular defined terms of the non-competition covenants (*i.e.*, "Restricted Activity," "Restricted Area," "Restricted Period"[8]), but rather disagree as to whether the Employment Agreement was

---

[8] Section 14.1.2 provides:

Physician also covenants that he/she shall not directly or indirectly engage in any Restricted Activity within the Restricted Area during the Restricted Period. For the avoidance of doubt, the covenant described in this Section 14.1.2 shall not apply in areas outside of the Restricted Area.

Section 14.1.3 provides:

As used herein, "Restricted Period" means the period of two (2) years following the date of termination of Physician's employment with the Company ("Termination Date").

terminated in July of 2018, when HSA's agreement with LSU terminated, and what specific terms governed Dr. Pappas's continued employment at HSA after termination of the Employment Agreement as a result of termination of HSA's agreement with LSU.

It is Dr. Pappas's position that as per the explicit terms of the Employment Agreement, Section 13.1.5, the Employment Agreement automatically terminated upon termination of HSA's agreement with LSU in July of 2018,[9] and that thereafter, he was employed pursuant to a new, unwritten, at-will employment agreement. He argues that other provisions contained in the Employment Agreement referencing his "employment," such as the non-competition covenants found in Section 14, and specifically Section 14.1.2, necessarily mean that his *employment under the Employment Agreement* ceased in July of 2018 upon termination of HSA's agreement with LSU. He argues that review of the Employment Agreement in its entirety clearly establishes that the parties did not contemplate in the Employment Agreement Dr. Pappas's remaining employed at HSA after termination of the Employment Agreement. In other words, multiple provisions in the Employment Agreement expressed the parties' expectation that termination of the Employment Agreement and the ending of Dr. Pappas's employment with HSA would be co-extensive,[10] and the Employment Agreement

---

[9] Section 13.1, entitled "Termination," provides:

Either party may terminate this Agreement at will at any time, with or without cause, by providing the other party with thirty (30) days written notice thereof. In addition, this Agreement shall automatically terminate upon the occurrence of any of the following events:

* * *

13.1.5 *Upon the expiration or termination of the LSU Agreement*; provided, however, that the Company shall notify Physician of the termination of the LSU Agreement promptly upon the Company learning of such termination.

(Emphasis added.)

[10] This position is based in part upon the "wind up" provision in Section 13.2 that the parties did not initiate or follow upon termination of the LSU Agreement.

does not provide specific terms for the scenario of Dr. Pappas's continued employment at HSA after termination of the Employment Agreement.

In response, it is HSA's position that the Employment Agreement was simply orally amended by the parties in July of 2018 only as to Dr. Pappas's salary and his obligation to provide services to LSU (and thus was not terminated in July of 2018), and thus the non-competition covenants contained in the Employment Agreement remained enforceable for two years after Dr. Pappas ended his employment with HSA in October of 2021. Alternatively, HSA argues that the non-competition covenants contained in the Employment Agreement survived the 2018 termination of the Employment Agreement, as per Section 14.6 (quoted *supra* in footnote 2), and remained enforceable for two years after Dr. Pappas's resignation from employment at HSA in October of 2021. HSA argues that Dr. Pappas's interpretation of the Employment Agreement leads to the absurd result that the non-competition covenants were only effective until July of 2020 and expired during the term of Dr. Pappas's continued employment with HSA and prior to the ending of his employment at HSA in October of 2021.

This Court has carefully reviewed the entire record and the transcript of the February 7, 2022 hearing. Two witnesses testified: Dr. Pappas and Dr. Eric George, the principal owner of HSA. Each testified regarding their impressions of the meaning and effect of certain provisions of the Employment Agreement. The Employment Agreement was introduced into evidence, as were numerous emails between the parties showing their communications at different times while Dr. Pappas worked at HSA, concerning Dr. Pappas's request to end the LSU agreement, the events and consequences of the 2020 furlough of Dr. Pappas, and Dr. Pappas's taking medical leave from HSA during 2021, among other things. Upon review, we find that the record as a whole supports a determination that when HSA's agreement with LSU terminated in July of 2018, the Employment

Agreement automatically terminated according to the explicit terms of Section 13.1.5 thereof. Dr. George even admitted as much on the stand in his testimony at the hearing. We also find that the Employment Agreement as a whole was written to view termination of the Employment Agreement and termination of Dr. Pappas's employment with HSA as co-extensive events, which did not in fact occur, as Dr. Pappas remained employed by HSA after HSA's agreement with LSU was terminated in July of 2018, but under different salary and working conditions. Therefore, the parties' intent regarding what specific terms would govern Dr. Pappas's continued employment at HSA after July of 2018 cannot be determined from the text of the Employment Agreement.

Regarding the survival provisions appertaining to the non-competition covenants contained in the Employment Agreement, Dr. Pappas does not contest that the non-competition covenants survived for a period of two years following termination of the Employment Agreement as a result of termination of HSA's agreement with LSU in July of 2018 (*i.e.*, from July of 2018 to July of 2020), but no further. As such, Dr. Pappas argues that the non-competition covenants were no longer enforceable against him as of July of 2020, which is before his employment at HSA ended and before he filed this suit. Upon review, in light of our findings herein that the Employment Agreement terminated in July of 2018 and that the Employment Agreement did not contemplate Dr. Pappas's continuing to work at HSA after termination of the Employment Agreement under different terms and conditions, as set forth above, we cannot say, at this juncture, that we disagree with Dr. Pappas's arguments in this regard.

As stated above, a *prima facie* case is something less than a preponderance of the evidence. Upon review, we find that the record as a whole, at this juncture, supports the trial court's finding that Dr. Pappas has presented a *prima facie* case in support of his request for a preliminary injunction and thus is entitled to a

preliminary injunction against HSA, preventing the enforcement of the non-competition covenants contained in the Employment Agreement pending determination of the merits of the case. Thus, we find that the trial court did not abuse its discretion in granting the preliminary injunction. The declaratory judgment and the permanent injunction should be determined in ordinary proceedings after a trial on the merits and by a preponderance of the evidence. This assignment of error is without merit.

### *Improper grant of declaratory judgment*

Next, HSA argues that the trial court erred as a matter of law by rendering a declaratory judgment, finding the non-competition covenants unenforceable, because a declaratory judgment determination employs ordinary proceedings, when the only matter set for hearing was the preliminary injunction, which is a summary proceeding.[11]

HSA is correct in its argument that preliminary injunctions are heard in summary proceedings, declaratory actions proceed by ordinary process, and these matters may only be cumulated and heard together upon express agreement of the parties. *Singleton v. E. Baton Rouge Par. Sch. Bd*., 22-0667 (La. App. 1 Cir. 9/16/22), 353 So.3d 164, 173-74. As the court said therein:

> A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. *Dalke v. Armantono*, 2009-1954 (La. App. 1st Cir. 5/7/10), 40 So.3d 981, 987. In some cases, the merits of an action may be decided during an interlocutory proceeding; this is only when the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary injunction. *Zachary Mitigation Area, LLC v. Tangipahoa Parish Council*, 2016-1675 (La. App. 1st Cir. 9/21/17), 231 So.3d 687, 692.

*Id.* at 173, n.21.

---

[11] We recognize that the exception of no cause of action was set and heard at the same hearing, but the exception practice is not germane to the assignment of error on appeal and thus is not discussed herein.

The record is clear that only the preliminary injunction, and not the declaratory judgment action, was set for hearing on February 7, 2022, and that the parties did not agree, expressly or otherwise, to expand the hearing to include the merits of the action (declaratory relief and permanent injunction). First, this is evidenced by the Rule to Show Cause found at p. 13 of the record, which sets *the request for preliminary injunction* (and no other request for relief) for hearing on February 7, 2022. This is also evidenced by the Rule to Show Cause found on p. 36 of the record, which sets *the peremptory exception of no cause of action* for hearing "on the same date as the preliminary injunction hearing scheduled for February 7, 2022 … ."

At the hearing on February 7, 2022, the transcript reflects that when the case was called, the judge specifically said "We are here today in reference to the exceptions [*sic*] of no cause of action and a petition for an injunction." Prior to plaintiff's counsel calling a witness at the hearing, the judge asked: "Are you on a declaratory judgment -- preliminary injunction? That's what I'm asking. What are you arguing at this point for the record?" Counsel for plaintiff answered: "Preliminary injunction, your honor."

Later near the end of the hearing, Mr. Franco, counsel for defendant HSA, in response to the judge's question as to whether he had any objection to calling Dr. Pappas as a rebuttal witness, said "Yes, sir. There's objections. This is a preliminary injunction hearing. We've heard things at [*sic*] nauseam. And I think they've put on their case." Moments later, the judge stated that he would take the matter under advisement and allowed both parties to file post-trial briefs.

Dr. Pappas's post-trial brief clearly states in the first paragraph that the post-hearing memorandum was submitted in support of his application for a "preliminary injunction." Dr. Pappas's brief concludes with the statement that he "has made a *prima facie* showing he will prevail on the merits, and he has shown

he will suffer irreparable injury if the Court does not enter the requested preliminary injunction.  Dr. Pappas therefore respectfully requests the Court: (1) enter a preliminary injunction prohibiting Defendant, Hand Surgical Associates, Ltd. ("HSA"), from enforcing the noncompetition provision contained in his long-expired 2014 Employment Agreement with HSA, and (2) award him his reasonable attorney's fees and costs incurred in obtaining the requested preliminary injunction."

HSA filed a post-trial brief "in opposition to the motion for preliminary injunction," arguing that Dr. Pappas was not entitled to a preliminary injunction because he had failed to show that he would sustain irreparable injury absent the injunction, and also failed to make a *prima facie* showing that he would prevail on the merits of the case.

The above record excerpts clearly show that only the preliminary injunction was before the trial court on February 7, 2022.  The parties clearly did not expressly agree to hear or decide the request for a declaratory judgment, and at all points, the parties were clear that only the preliminary injunction request had been heard.

Specific language in the judgment of April 7, 2022, however, indicates that the trial court ruled on the request for declaratory judgment, in addition to the request for preliminary injunction.  In the judgment's first paragraph, the court states:

> On February 7, 2022, this matter came before this Court for hearing on a *Verified Petition/or Declaratory Judgment, Preliminary Injunction, Permanent Injunction, and Damages* filed by the plaintiff, Nicholas D. Pappas, III, M.D., and against the defendant, Hand Surgical Associates, LTD.

Further, the judgment's decretal language states:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the *Verified Petition for Declaratory Judgment and Preliminary Injunction,* filed by the plaintiff, Nicholas D. Pappas, III, M.D., and

against the defendant, Hand Surgical Associates, LTD, be and is hereby, **GRANTED.**

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Noncompetition Provision set forth in Section 14 of the Employment Agreement is ***unenforceable.***

(Emphasis in original.)

Comparing the language employed by the trial court in the introductory paragraph of the judgment ("… this matter came before this Court for hearing on a *Verified Petition/or Declaratory Judgment, Preliminary Injunction, Permanent Injunction, and Damages*") with the decretal language ("**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the *Verified Petition for Declaratory Judgment and Preliminary Injunction*, … is hereby, **GRANTED.**") strongly suggests that the trial court granted the declaratory judgment, when that action was not properly before the court at that time procedurally, or by express agreement of the parties, as discussed above. Accordingly, finding merit to this assignment of error, we vacate the declaratory judgment granted by the trial court in its April 7, 2022 judgment.

### *Lack of showing of irreparable injury*

Next, HSA argues that the trial court erred in finding that Dr. Pappas would suffer irreparable injury if the preliminary injunction was not granted. In general, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue. *USI Ins. Servs., LLC v. Tappel*, *supra*, 28 So.3d at 424.

Irreparable injury means the petitioner cannot adequately be compensated in money damages or suffers injuries which cannot be measured by pecuniary standards. *Bernhard MCC, LLC v. Zeringue*, 19-529 (La. App. 5 Cir. 9/9/20), 303 So.3d 372, 377, *writ denied*, 20-01172 (La. 12/8/20), 306 So.3d 434. As pointed out previously, the primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss, or damage to the applicant.

*Wechem, Inc. v. Evans*, *supra*, 274 So.3d at 884.  The trial court has great discretion in determining whether a preliminary injunction is warranted; thus, the trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion.  *Bernhard MCC, LLC v. Zeringue*, *supra*, 303 So.3d at 378.

Upon review, we find no abuse of the trial court's discretion in finding that Dr. Pappas proved irreparable injury pending trial on the merits of the injunction. Dr. Pappas testified that he works in a highly specialized field with limited opportunities for employment, and with no guarantee that jobs would be available elsewhere.  Dr. Pappas testified that he left a more lucrative job in South Carolina in order to move back to the New Orleans area to be with family, and enforcing the non-competition covenants against him would likely require moving his family, which now includes a young child, away from the restricted area in order to find employment, a factor that cannot be compensated with money.  Dr. Pappas further argues that while defendant asserted that he could find a job in St. John the Baptist Parish, which is nearby and not within the restricted area defined by the non-competition covenants, HSA presented no evidence that a job in Dr. Pappas's highly specialized field was in fact available there.  This assignment of error is without merit.

### *Security for issuance of preliminary injunction*

Finally, HSA argues that the trial court erred in failing to fix security after issuance of the preliminary injunction, which requires this Court to vacate the preliminary injunction and remand the matter for the fixing of security.

As noted earlier, in brief, Dr. Pappas concedes that La. C.C.P. art. 3610[12] requires that the applicant furnish security after the issuance of a preliminary

---

[12] La. C.C.P. art. 3610 provides, in pertinent part:

A temporary restraining order or preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law.  The security shall indemnify the person

injunction. He asks that this Court maintain the preliminary injunction, and simply remand the matter for the trial court to fix security therefor.

HSA argues, however, that this Court has consistently held that "when the trial court's judgment does not set the amount of security to be furnished, the better approach is to vacate the injunction," citing *Advanced Collision Servs., Inc. v. State, Dep't of Transp.*, 93-470 (La. App. 5 Cir. 1/25/94), 631 So.2d 1245, 1247, and *Holley v. Holley*, 17-325 (La. App. 5 Cir. 11/20/17), 232 So.3d 717, 727.[13]

Upon review, we find that these cases cited by HSA are distinguishable from the instant case. In *Holley v. Holley*, 232 So.3d at 727, this Court reversed the grant of a preliminary injunction not only for the failure of the trial court to set a bond, but also after finding that the trial court committed errors of law in the application of the Louisiana Relocation Act, La. R.S. 9:355.1, *et seq.*, therefore providing separate and independent grounds to reverse the grant of the preliminary injunction. Further, in *Advanced Collision Servs., Inc. v. State, Dep't of Transp.*, 631 So.2d at 1247, this Court likewise found an additional, independent basis upon which the trial court erred in granting the preliminary injunction. Thus, a remand for setting security on an otherwise reversed preliminary injunction would have been meaningless.

In the instant case, it is possible that the trial court did not order plaintiff to furnish security for the preliminary injunction because the trial court additionally granted the declaratory judgment. We have, however, vacated the declaratory judgment. Under these circumstances, given that we affirm the grant of the

---

wrongfully restrained or enjoined for the payment of costs incurred and damages sustained. …

[13] In brief, HSA represents this quote as coming from *Holley v. Holley, supra* (("While other circuits have held that … a remand may be appropriate, … this Circuit has consistently found that the language provided in La. C.C.P. art. 3610, requiring security for the issuance of a preliminary injunction, is mandatory.")). However, that language is found in *Cochran v. Crosby*, 411 So.2d 654, 655 (La. App. 4 Cir. 1982), which is cited by *Advanced Collision Servs., Inc. v. State, Dep't of Transp.*, 631 So.2d at 1247, not by *Holley v. Holley*.

preliminary injunction, we find that vacating the preliminary injunction on the basis of the security issue alone is not required, and that a remand simply for fixing of security best serves the interests of justice and the efficient administration of justice.  Accordingly, this assignment of error has merit.  We decline to vacate the preliminary injunction on this ground; however, we remand the matter for the trial court to fix security for issuance of the preliminary injunction.  See *Liberty Bank & Tr. Co. v. Dapremont*, 00-2146 (La. App. 4 Cir. 12/12/01), 803 So.2d 387, 392.  See also *Ard v. GrrlSpot, LLC*, 19-0312 (La. App. 4 Cir. 10/23/19), 2019 WL 5432098.

## DECREE

For the foregoing reasons, the judgment of the trial court granting the preliminary injunction against HSA is affirmed; the judgment of the trial court granting the declaratory judgment is vacated; and the matter is remanded for the trial court to fix security for the issuance of the preliminary injunction and for further proceedings consistent with this opinion.

**AFFIRMED IN PART; GRANT OF DECLARATORY JUDGMENT VACATED; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 29, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-CA-407**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
BENJAMIN M. CASTORIANO (APPELLEE)      LESLIE W. EHRET (APPELLEE)          PHILIP A. FRANCO (APPELLANT)
TIMOTHY M. BRINKS (APPELLANT)

**MAILED**
DAVID I. COURCELLE (APPELLEE)
ATTORNEY AT LAW
3500 NORTH CAUSEWAY BOULEVARD
SUITE 185
METAIRIE, LA 70002